(April 3, 2007)

■ CREDITANSTALT INVESTMENT BANK AG et al., Appellants, v
CHADBOURNE & PARKE LLP, Respondent. [831 NYS2d 705]—

Order, Supreme Court, New York County (Barbara R. Kap-
nick, J.), entered November 23, 2005, which, to the extent ap-
pealed from as limited by the briefs, declared that plaintiffs
waived the attorney-client privilege as to legal advice they
received regarding compliance of their Russian operation with
Russian tax laws and licensure requirements, affirmed, without
costs.

Defendant sufficiently demonstrated that the advice it gave in
the course of its allegedly negligent representation was framed,
in this malpractice action, as the sole cause of plaintiffs' injury
in Russia. Invasion of the attorney-client privilege is necessary,
under these circumstances, to determine the validity of such
claims, and is vital to the defense (see Orco Bank v Proteinas
Del Pacifico, 179 AD2d 390 [1992]).

We have considered plaintiffs' remaining arguments and find
them unavailing. Concur—Nardelli, J.P., Williams, Catterson
and Malone, JJ.

McGuire, J., dissents in a memorandum as follows: I respect-
fully dissent. In this action brought by former clients of the de-
fendant law firm for legal malpractice, plaintiffs allege that de-
fendant negligently provided erroneous advice concerning the
legality under Russian law of a particular vehicle for investment
in certain Russian securities (the SP Structure), and that
plaintiffs relied on that advice and suffered damages as a result
of their reliance. As plaintiffs have never disputed, by commenc-
ing this action they waived the attorney-client privilege with re-

spect to the SP Structure (*Jakobleff v Cerrato, Sweeney & Cohn*, 97 AD2d 834, 835 [1983]; *Hearn v Rhay*, 68 FRD 574, 581 [1975]). As the record reveals, the raids and seizures relating to plaintiffs' business activities undertaken by Russian law enforcement officials may not have been prompted solely by the formation and operation of the SP Structure. Rather, issues relating to plaintiffs' compliance with tax and licensure laws also may have prompted those actions.

Any legal advice that plaintiffs received relating to such tax and licensure matters, however, could not possibly shed any light on what caused the Russian authorities so to act. Accordingly, even if the negligent advice regarding the SP Structure "was framed [in the complaint] as the sole cause of plaintiffs' injury in Russia," discovery by defendant into the legal advice plaintiffs received relating to other matters, including the tax and licensure issues, would not explain why the Russian authorities took the actions that they did. Moreover, any allegation that the negligent advice regarding the SP Structure was the sole cause of plaintiffs' injuries would be gratuitous, as plaintiffs are required to prove only that the advice was a substantial factor in bringing about their injuries (*DeBartolo v Coccia*, 276 AD2d 663 [2000]). Thus, plaintiffs' allegations on causation did not place "at issue" the legal advice they received on subjects other than the SP Structure.

Of course, it is conceivable, at least as a logical matter, that discovery by defendant of otherwise privileged communications and advice relating to the tax and licensure issues might show that plaintiffs regularly disregard legal advice and thus did not rely on defendant's advice relating to the SP Structure. But the abstract possibility that invading the privilege would reveal such a state of affairs cannot ground a valid argument for upholding a waiver of the privilege. If it could, as plaintiffs point out, by filing a legal malpractice suit a plaintiff would be forced to disclose all legal advice it ever received for purposes of determining whether it tended to listen to its lawyers. To be sure, defendant expressly disavows such an argument. But once defendant's reliance on plaintiffs' allegations on causation is disregarded, defendant's claim of waiver reduces to the proposition that because plaintiffs have waived the privilege with respect to the SP Structure by alleging that they relied on defendant's advice, plaintiffs have waived the privilege with respect to the advice they received on other subjects relating to their business dealings in Russia.

For these reasons, I would hold that by bringing this action plaintiffs did not put at issue, and thereby waive the attorney-

client privilege with respect to, any advice they received on tax and licensure issues (*Stark v Greenberg, Dauber & Epstein*, 219 AD2d 571, 572 [1995] [communications between plaintiffs and their attorneys over issues not raised in malpractice action remain privileged]; *TIG Ins. Co. v Yules & Yules*, 1999 WL 1029712, *1, 1999 US Dist LEXIS 17607, *4-5 [SD NY 1999] ["at issue" waiver recognized "where the party is in fact invoking the substance of the privileged conversation . . . or where the claim or defense is of such a nature that an assessment of its merits *requires* an examination of the substance of a privileged conversation" (emphasis added)] [construing New York law]).*

Supreme Court did not reach the alternative argument defendant offered in support of its motion, i.e., that plaintiffs waived the privilege with respect to legal advice concerning compliance with tax and licensure requirements by permitting their former general counsel to testify about these issues at his deposition. Understandably, given its conclusion that plaintiffs waived the privilege on these issues by virtue of the allegations of the complaint, the majority also does not address defendant's alternative argument. I would address this argument and reject it. Contrary to defendant's contentions, plaintiffs' former general counsel did not testify about otherwise privileged communications and advice during his deposition.

Accordingly, I would reverse, declare that plaintiffs have not waived the attorney-client privilege as to legal advice they received regarding compliance with Russian tax laws and licensure requirements, and deny defendant's motion.

---

* The case the majority cites, *Orco Bank v Proteinas Del Pacifico* (179 AD2d 390 [1992]), does not support defendant's position. In *Orco Bank*, the plaintiff had alleged that it had loaned money in reliance on a letter by one of the defendant's managers stating that the defendant held valuable collateral "at the disposal of the plaintiff" (*id.*). During the deposition of the plaintiff's president, "defendant attempted to probe the measures plaintiff took to assure itself of the existence of this [collateral] and of the authority of defendant's manager to issue the representation" (*id.*). In response, the plaintiff's president stated that the plaintiff had "relied upon the advice of its lawyers who informed it, for example, 'we had a good security' " (*id.*). The plaintiff "withheld more detailed testimony, and documents, on grounds of attorney-client privilege" (*id.*). On these facts, this Court held "Supreme Court properly found plaintiff had waived the attorney-client privilege by placing the subject matter of counsel's advice in issue and by making selective disclosure of such advice" (*id.* [citations omitted]). By contrast, there are no comparable facts in this case demonstrating that plaintiffs have impermissibly used the attorney-client privilege as a shield and a sword (*see United States v Bilzerian*, 926 F2d 1285, 1292 [2d Cir 1991] [noting that privilege "cannot at once be used as a shield and a sword"]).